IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
BILLY L. ROSE,                  :    CONSOLIDATED UNDER
ET AL.,                         :    MDL 875
                                :
      Plaintiffs,               :
                                :
                                :
      v.                        :
                                :
                                :
A-C PRODUCT LIABILITY TRUST,    :    E.D. PA CIVIL ACTION NO.
ET AL.,                         :    2:11-30945-ER
                                :
      Defendants.               :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                     September 28, 2015

This case was transferred in January 2011 from the
United State District Court for the Northern District of Ohio to
the United States District Court for the Eastern District of
Pennsylvania, where it became part of the consolidated asbestos
products liability multidistrict litigation (MDL 875). The case
was assigned to the Court's maritime docket ("MARDOC").

Willard E. Bartel and David E. Peebles ("Plaintiffs"),
Administrators of the Estate of Billy L. Rose, allege that Billy
Rose ("Decedent" or "Mr. Rose") was exposed to asbestos while
working aboard various ships. Plaintiffs assert that Decedent
developed an asbestos-related illness as a result of his
exposure to asbestos aboard those ships.

For the reasons that follow, the Court will deny Defendants' motion.

## I.   BACKGROUND

On May 5, 2000, Mr. Rose brought claims (now pursued by Plaintiff after the death of Mr. Rose) against various defendants, including shipowners represented by Thompson Hine LLP ("Defendants" or the "Thompson Hine Shipowners"). By way of Order dated March 14, 1997, Judge Charles Weiner[1] had already dismissed those claims administratively (before they were filed), leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Approximately two months

---

[1]     Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]     On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to the instant case (and all future MARDOC cases that had not yet been filed). In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining

prior to the filing of his asbestos action (on March 30, 2000), Mr. Rose had filed for bankruptcy under Chapter 7 of the bankruptcy code in the United States Bankruptcy Court for the Northern District of California. The bankruptcy case was closed approximately four months later (on July 11, 2000). On January 24, 2011 (over ten years after the bankruptcy case was closed and over ten years after Mr. Rose first filed his asbestos action), the MDL Court reinstated Mr. Rose's asbestos action, which had been pre-dismissed by Judge Weiner in 1997. A summary of this timeline of events is as follows:

- March 1997 - Asbestos action administratively dismissed (prior to its filing)
- March 2000 - Bankruptcy action filed
- May 2000 - Asbestos action filed
- July 2000 - Bankruptcy action closed
- January 2011 - Asbestos action reinstated by MDL Court

The Thompson Hine Shipowners have moved for summary judgment, arguing that (1) Plaintiff's claims are barred by way of judicial estoppel because Mr. Rose failed to disclose the asbestos action as an asset in his bankruptcy filing, and (2)

---

settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

Plaintiff cannot pursue the asbestos action because it is now owned by the bankruptcy estate.

## II.  LEGAL STANDARD

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing

<u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

      B.   <u>The Applicable Law</u>

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. <u>See</u> <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

---

[3]     "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." <u>Ryan Operations</u>, 81 F.3d at 358 n.2.

## III. THE PARTIES' ARGUMENTS

A.   <u>Judicial Estoppel</u>

Defendants contend that Plaintiffs' claims are barred on grounds of judicial estoppel. Specifically, they contend that Mr. Rose took irreconcilably inconsistent positions in his bankruptcy proceeding and the instant proceeding. Defendants state that Mr. Rose concealed the existence of his asbestos claims when filing for bankruptcy by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current asbestos action (which was filed only two months after the filing of the bankruptcy action). They further assert that a finding of bad faith is warranted because Mr. Rose had knowledge of the asbestos claims at the time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors - a motive Defendants assert is common to nearly all debtors in bankruptcy).

In attempting to identify evidence that Mr. Rose had knowledge of his asbestos claims at the time he filed for bankruptcy, Defendants attach the following:

- <u>Medical Letters (September and October 1997)</u>
  Defendants attach two letters from medical physicians dated September 12, 1997 and

October 1, 1997, which were sent to Mr.
Rose's asbestos counsel and which indicate
the experts reviewed Mr. Rose's medical
records. One letter purports to diagnose Mr.
Rose with an asbestos-related illness, while
the other indicates the information in his
records is consistent with an asbestos-
related illness. Neither of the letters
indicates that Mr. Rose had experienced any
difficulties in breathing or other
impairments or had indicated an awareness of
any other manifestations of an asbestos-
related illness.

(Def. Ex. 1, ECF No. 89-2 at 3-4.)

Finally, Defendants contend that no lesser remedy is
warranted because the sanction of barring the asbestos claims is
necessary to (1) keep Plaintiff from profiting from the omission
and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiffs contend that the asbestos claims are not
barred on grounds of judicial estoppel. First, Plaintiffs
contend that Mr. Rose did not take inconsistent positions
between his bankruptcy filing and the present asbestos action
because at the time of his bankruptcy filing – and throughout
the entire duration of that action – his asbestos claims were
dismissed, such that he was not required to list them as an
asset in his bankruptcy action. Moreover, Plaintiffs argue that
even if Mr. Rose should have identified the asbestos claims, the
failure to do so was a good faith mistake such that judicial
estoppel is not warranted.

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Rose acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiffs assert that bad faith cannot be proven in light of the fact that the claims were dismissed long before he filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

B.   Real Party in Interest/Standing

In the alternative, Defendants contend that Plaintiffs have no right to pursue the claims because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Rose did not report the asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that because Mr. Rose did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Mr. Rose through abandonment of any remaining assets not administered (as would normally happen

pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy action has closed, the rights to the asbestos claims did not revert back to Mr. Rose upon that closure and instead remain with the trustee, such that Plaintiffs may not now pursue them.[4]

Plaintiffs assert that, because the asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Mr. Rose disclosed them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal

---

[4]     Defendants also assert that Plaintiffs may only pursue claims held by Mr. Rose at the time of his death and that, because the claims belonged to the bankruptcy trustee at the time of Mr. Rose's death, there is no way Plaintiffs can salvage those claims now. In support of this argument, Defendants rely upon two decisions regarding FELA: Flynn v. New York, N.H., & H.R. Co., 283 U.S. 53, 56 (1931), and Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70 (1913).

Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337
F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing
that "[i]t has been specifically held that a debtor must
disclose any litigation likely to arise in a non-bankruptcy
contest"). However, debtors are not required to list "every
'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset
disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195,
2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal
Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the
bankruptcy estate - which in a Chapter 7 case is controlled by
the trustee - "encompasses everything that the debtor owns upon
filing a petition, as well as any derivative rights, such as
property interests the estate acquires after the case
commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000).
"While a bankruptcy case is pending, it is the trustee, and not
the debtor, who has the capacity to pursue the debtor's claims."
In re Kane, 628 F.3d at 637 (internal quotation marks and
citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §
554(d), a cause of action which a debtor fails to schedule,
remains property of the estate because it was not abandoned and
not administered." Allston-Wilson v. Philadelphia Newspapers,
Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,
2006); see also In re Kane, 628 F.3d at 637 ("an asset must be

properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995)).

Typically, the only interests that a bankruptcy estate owns are those that a plaintiff has at the time the petition is filed. In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000) (concluding that the bankruptcy "estate encompasses everything that the debtor owns upon filing a petition") (emphasis added); 11 U.S.C. § 541(a)(1). However, any new, post-petition interest (such as a legal claim) that is "sufficiently rooted in the pre-bankruptcy past" can also constitute part of the debtor's bankruptcy estate. See Segal v. Rochelle, 382 U.S. 375 (1966).

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate

all inconsistencies no matter how slight or inadvertent they may

be." Id. It "should only be applied to avoid a miscarriage of

justice" and "is only appropriate when the inconsistent

positions are tantamount to a knowing misrepresentation to or

even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324

(internal quotation marks and citations omitted). The "doctrine

of judicial estoppel does not apply 'when the prior position was

taken because of a good faith mistake rather than as part of a

scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362

(quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir.

1980)). "It is a fact-specific, equitable doctrine, applied at

courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir.

2010).

The Third Circuit Court of Appeals has formulated this

test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent.
> Second, judicial estoppel is unwarranted unless the
> party changed his or her position "in bad faith –
> i.e., with intent to play fast and loose with the
> court." Finally, a district court may not employ
> judicial estoppel unless it is "tailored to address
> the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's
> misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.

Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.

2001)). The Third Circuit has further concluded that a

"rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at 416-18); Ryan Operations, 81 F.3d at 363. However, the application of this inference does not arise "from the mere fact of nondisclosure." Ryan Operations, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, inter alia, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. See id. at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

## V.   ANALYSIS

### A.   Judicial Estoppel

Defendants contend that, because the dismissal of Mr. Rose's asbestos claims was merely administrative (such that the claims could be reinstated by Mr. Rose or the MDL Court at some

point in the future), the claims were assets whose omission from
Schedule B of the bankruptcy action constituted an inconsistent
position between the two lawsuits and creates an inference of
bad faith. Plaintiffs contend that because the claims had been
in a dismissed stage for over three years at the time of the
bankruptcy filing, they were not in essence assets and did not
need to be disclosed – and that, if they did constitute assets
that should have been disclosed, the failure to disclose them
was a good faith mistake.

   i. <u>Step One: Has Plaintiff Taken Two Irreconcilably
Inconsistent Positions?</u>

   It is undisputed that Mr. Rose did not list asbestos
claims (or any other legal claims) as assets in his bankruptcy
filing. Mr. Rose's duty of disclosure included identifying
pending lawsuits, lawsuits he intended to bring, and any
potential and likely lawsuits. <u>See</u> <u>Krystal Cadillac-Oldsmobile</u>,
337 F.3d at 322. While there may be a dispute as to exactly when
Mr. Rose learned of his asbestos-related illness (i.e., whether
it was before or after the filing of his bankruptcy petition),
it is undisputed that he knew of his asbestos claims while the
bankruptcy action was still pending.[5]  Therefore, in order to

---

[5]   Mr. Rose filed his asbestos action approximately five
weeks after filing his bankruptcy petition – and the bankruptcy
action was not closed until over two months after the filing of
his asbestos action.

determine whether Plaintiffs have taken two irreconcilably
inconsistent positions, the Court must first determine whether
Mr. Rose had a duty to amend his bankruptcy petition to include
his asbestos claims. Defendant has not cited any authority from
the Third Circuit that supports the proposition that Mr. Rose
was required to amend his petition to include asbestos claims

---

There is no evidence in the record that Mr. Rose was
aware of his asbestos claims (or his asbestos illness) at the
time that the bankruptcy action was filed. The Court has
reviewed the evidence that Defendants have presented to
establish their assertion to the contrary. While the medical
letters from 1997 indicate a diagnosis for Mr. Rose, the letters
were sent to Plaintiffs' counsel (not to Mr. Rose), and do not
indicate that the physicians ever met or spoke with Mr. Rose
personally (instead indicating only that they had reviewed his
medical files). Because there is no indication that Mr. Rose's
asbestos counsel was involved in the filing of his bankruptcy
action, it cannot be presumed (without some evidence of such)
that he knew of the asbestos claims (or his asbestos diagnosis)
when he filed his bankruptcy petition.

Moreover, this Court has held that maritime law
recognizes the "discovery rule" in determining the accrual of an
asbestos-related claim, such that under maritime law, a "cause
of action accrues when the injury manifests itself," with the
"key inquiry [being] whether the plaintiff has knowledge of the
injury and its cause." Nelson v. A.W. Chesterton, 2011 WL
6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). There is no
evidence in the record that Plaintiff's injury had manifest
itself – or that he had knowledge of its cause – prior to the
filing of his bankruptcy action. The earliest date on which the
evidence indicates he had knowledge of his injury or its cause
is the date on which his asbestos action was filed. As such,
there is no evidence that Mr. Rose's claims had even accrued on
any date prior to the date on which he filed for bankruptcy.

discovered after the filing of his petition.[6] The Court has

searched for but has not located any such authority.[7]

There is no evidence that Mr. Rose knew of his

asbestos claims when he filed for bankruptcy (and did not

include asbestos claims as an asset in his bankruptcy filings).

---

[6]     Nor have Defendants cited any cases from outside the
Third Circuit that support this proposition.

[7]     The Court is aware of the decision in <u>Coles v.
Carlini</u>, 2013 WL 3811642 (D.N.J. 2013), which held that a debtor
has an obligation to amend a bankruptcy petition to disclose
newly discovered claims. However, that decision (1) involved a
Chapter 13 petition, (2) relied solely on authority pertaining
specifically to Chapter 13 (including, in particular, 11 U.S.C.
§ 1306), and (3) did not cite any authority for the proposition
that such an amendment is also required for a Chapter 7
petition. The rationale for requiring an amendment in a Chapter
13 bankruptcy action does not apply to a Chapter 7 petition:
Chapter 7 is designed to liquidate existing assets for
distribution to creditors in order "to leave the bankrupt **free
after the date of his petition to accumulate new wealth** in the
future," <u>Segal</u>, 382 U.S. at 379 (emphasis added), while Chapter
13 (like Chapter 11) is designed to adjust debts in order to
reorganize payments to creditors on debts that will continue to
exist even after the bankruptcy is closed. <u>See In re Michael</u>,
699 F.3d 305, 306-07, n.1 (3d Cir. 2012). <u>In re Michael</u> held
that a Chapter 13 trustee holding funds acquired post-petition
by the debtor (for eventual distribution to creditors under a
confirmed Chapter 13 reorganization plan) must return those
post-petition funds to the debtor upon conversion of the case to
a Chapter 7 case. <u>Id.</u> at 307. Therefore, <u>Cole</u> is not applicable
here.
        While it is true that a cause of action that arises
after the filing of a bankruptcy petition belongs to the
bankruptcy estate if it is "sufficiently rooted in the pre-
bankruptcy past," <u>Segal</u>, 382 U.S. at 380, this raises an issue
separate from whether Plaintiffs' claims are judicially estopped
due to any failure on the part of Mr. Rose to amend his petition
– an issue dealt with later herein (i.e., whether Plaintiffs or
the bankruptcy estate are/is the real party-in-interest to the
asbestos action).

Under these specific circumstances and pursuant to the discovery
rule, there is no duty for a Chapter 7 debtor to amend a
petition to disclose claims discovered after the date of the
filing of the petition. Therefore, although it is true both that
Mr. Rose represented to the Bankruptcy Court (at the time of the
filing of his petition) that such an asset did not exist, and
that Plaintiffs are now pursing those same claims that Mr. Rose
represented did not exist, the two positions are <u>not</u>
irreconcilably inconsistent. <u>See</u> <u>id.</u> at 319-320.

    ii.  <u>Step Two: Did Plaintiff Change His Position In
Bad Faith</u>

In light of the foregoing determination (i.e., that
there was not a change in position on the part of Mr. Rose in
not identifying asbestos claims in his bankruptcy petition), the
analysis on this issue is complete, and the Court need not reach
the second step of the analysis (whether there was "bad faith"
behind such a change).[8]

---

[8]    The Court notes nonetheless, that it would not
conclude that any purported change in position by Mr. Rose was
done in "bad faith." While Judge Weiner's orders appear to have
invited reinstatement of asbestos actions subject to certain
conditions, none of the cases that were administratively
dismissed was ever reinstated from 1997 to 2009, until this
Court, <u>sua</u> <u>sponte</u>, did so <u>en</u> <u>masse</u>. That a layman such as Mr.
rose would have had the foresight to know in 2000 when he filed
for Chapter 7 bankruptcy, that eleven year later a new presiding
Judge of the MDL would reopen his asbestos case, would have
required unrealistic power of prescience. Rather, for all
practical purposes, the entire MARDOC litigation in the MDL
Court - including Mr. Rose's case - was in a "black hole,"

For the above reasons, Defendants' motion for summary judgment on grounds of judicial estoppel will be denied. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-50.

B.   <u>Real Party in Interest/Standing</u>

Defendants next contend that, despite Mr. Rose's failure to list the asbestos claims on his bankruptcy petition, the claims now belong to the bankruptcy trustee (pursuant to 11 U.S.C. § 541(a)(1) such that Plaintiffs have no right to pursue them. They assert that, because Mr. Rose did not properly schedule those claims as assets, the trustees were incapable of passing those claims back to Mr. Rose through abandonment of any remaining and unpursued assets as would normally happen pursuant to 11 U.S.C. § 554.

The Court has held that, absent evidence that Mr. Rose knew of his asbestos claims at the time he filed for bankruptcy, he was not required to schedule those claims (inititally or by way of amendment). The question then, under the facts of this

---

uncertain to ever emerge again.  <u>See</u> Hon. Eduardo C. Robreno, <u>The Federal Asbestos Product Liability Multidistrict Litigation</u> <u>(MDL-875): Black Hole or New Paradigm?</u>, 23 Widener L. J. 97, 126 (2013). Under these circumstances, the Court finds that any purported failure to disclose the asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. <u>See</u> <u>Krystal Cadillac</u>, 337 F.3d at 319-20. Accordingly, the Court would not find that Mr. Rose changed his position "in bad faith" such that it warrants the application of judicial estoppel. <u>See</u> <u>Ryan Operations</u>, 81 F.3d at 363.

case, is whether the claims were nonetheless property of the
bankruptcy estate by operation of law.

The Supreme Court has held that, when a cause of
action arises after the filing of a bankruptcy petition, the
claim belongs to the bankruptcy estate only if it is
"sufficiently rooted in the pre-bankruptcy past." Segal, 382
U.S. at 380. Therefore, the Court must determine whether Mr.
Rose's asbestos claims were sufficiently rooted in the pre-
bankruptcy past. Id. In doing so, it will consider cases relied
upon by the Thompson Hine Defendants to support their contention
that the claims are sufficiently rooted in the pre-bankruptcy
estate to constitute property of the estate.[9]

---

[9]      Apparently because of their contention that Mr. Rose
knew of his asbestos claims at the time he filed for bankruptcy,
Defendants have not addressed this issue in their briefing.
However, in numerous other cases in which a plaintiff had an
asbestos claim that undisputedly arose post-petition (e.g.,
Figueroa v. A-C Product Liability Trust, 2:11-cv-30255, ECF No.
134 at 6-8), the Thompson Hine Defendants contend that such
post-petition claims are sufficiently rooted in the pre-
bankruptcy past to constitute property of the bankruptcy estate.
In support of this contention, they rely upon Segal v. Rochelle,
382 U.S. 375, 380 (1966), and In re Richards, 249 B.R. 859, 861
(Bankr. E.D. Mich. 2000); In re Sommer, 2008 WL 704401 (Bankr.
N.D. Ohio March 14, 2008); In re Webb, 484 B.R. 501 (Bankr. M.D.
Ga. 2012); In re Strada Design Assocs., Inc., 326 B.R. 229, 236
(Bankr. S.D.N.Y. 2005); In re Salander, 450 B.R. 37, 46 (Bankr.
S.D.N.Y. 2011); Field v. Transcontinental Ins. Co., 219 B.R.
115, 119 (E.D. Va. 1998); Rivera v. Ndola Pharmacy Corp., 497 F.
Supp. 2d 381 (E.D.N.Y. June 29, 2007); and In re Borchert, 2010
WL 153384 (Bankr. N.D.N.Y. Jan. 8, 2010).

In Segal, the Supreme Court concluded that a tax refund originating from a tax return filed before the bankruptcy petition was property of the estate, even though the refund was not payable until after the petition was filed. Segal, 382 U.S. at 379-82. In explaining its rationale in Segal, the Supreme Court stated:

> The main thrust of [the relevant section of the bankruptcy code] is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. E.g., Horton v. Moore, 6 Cir., 110 F.2d 189 (contingent, postponed interest in a trust); Kleinschmidt v. Schroeter, 9 Cir., 94 F.2d 707 (limited interest in future profits of a joint venture); see 3 Remington, Bankruptcy ss 1177—1269 (Henderson ed. 1957). However, limitations on the term do grow out of other purposes of the Act; **one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future.**
>
> .         .         .
>
> Temporally, two key **elements pointing toward realization of a refund existed at the time these bankruptcy petitions were filed**: taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss.

382 U.S. at 379-80 (emphasis added). The facts of Segal are distinguishable from those of the present situation because, unlike the expected tax refund in Segal, there is no evidence that Mr. Rose knew of his asbestos claims at the time he filed

his bankruptcy petition. As the Supreme Court noted in Segal,
whether an asset is "property" of the bankruptcy estate must be
determined by the purposes behind the Bankruptcy Act, and one of
the primary purposes of allowing Chapter 7 bankruptcy filings
and limiting the forfeiture of assets to those existing at the
time of the filing is to allow the bankrupt to start afresh and
accumulate new wealth in the future. In short, the rationale of
Segal (and the bankruptcy law interpreted by the Supreme Court
therein) does not support a decision to preclude Mr. Rose from
obtaining a financial recovery on a claim that did not exist at
the time he filed for bankruptcy. Id. This is true despite the
fact that the alleged asbestos exposure giving rise to the claim
occurred long before that bankruptcy petition was filed – a
factual scenario considered by a bankruptcy court in Michigan in
In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), upon
which Defendants rely.

Like the case at hand, In re Richards involved an
asbestos claim for an illness that was diagnosed after a debtor
had filed for bankruptcy and while the bankruptcy action was
still pending. The court held (in accord with Segal) that, "in
determining whether a claim is property of the bankruptcy
estate, the test is not the date that the claim accrues under
state law" but "whether the claim is 'sufficiently rooted in the
pre-bankruptcy past'." 249 B.R. at 861. The court concluded that

the debtor's asbestos-related cancer claim was sufficiently
rooted in his pre-petition past and should therefore be
considered part of the bankruptcy estate based on the two facts
that: (1) "All of the allegedly wrongful conduct giving rise to
the debtor's claim occurred prepetition," and (2) "although the
diagnosis was made seven months after the petition was filed,
that timing appears to have been more a result of happenstance
than of medical necessity. It appears likely that both the <u>onset
of the debtor's disease</u> and a <u>greater portion of its progress</u>
occurred before he filed his petition." <u>Id.</u> (emphasis added).
The Court notes that <u>In re Richards</u> is not binding on this court
and, in addition, involved claims that were governed by Michigan
law (under which the causes of action accrued when the plaintiff
"knew or should have known" of his asbestos-related illness,
<u>id.</u>) rather than maritime law (under which an asbestos cause of
action accrues when the illness manifests itself, or when the
plaintiff has knowledge of the injury and its cause, <u>Nelson</u>,
2011 WL 6016990 (E.D. Pa. Oct. 27, 2011)).

          In the case at hand, there is no evidence in the
record that Mr. Rose knew of his asbestos illness, or
experienced any symptoms of that illness prior to the date on
which the bankruptcy petition was filed. As such, unlike <u>In re
Richards</u> (where an asbestos claim accrued under the applicable
law when a plaintiff "should have" known of his illness), it

cannot be concluded that Mr. Rose's asbestos claim accrued
(under maritime law) prior to the filing of his bankruptcy
petition. Moreover, without evidence in the record to the
contrary, the Court is unwilling to conclude that the onset of
Mr. Rose's asbestos-related disease – or any of its progress -
occurred prior to the date of the filing of his bankruptcy
petition. This is because mere pre-petition exposure to asbestos
did not necessarily result in an injury to Mr. Rose. It was not
until that illness actually manifest itself that the exposure
gave rise to a claim – and an interest over which the bankruptcy
trustee could potentially have ownership. Therefore, even when
applying the rationale of In re Richards, the Court must
conclude that although the alleged asbestos exposure giving rise
to the asbestos claims occurred prior to the filing of his
bankruptcy petition, Mr. Rose's asbestos claims are not
"sufficiently rooted" in his pre-bankruptcy past to be deemed
property of the bankruptcy estate.

In re Sommer, which also involved an asbestos claim,
ownership of which was claimed by a bankruptcy trustee, is
distinguishable from the case at hand because, in that case, the
asbestos illness was diagnosed prior to the filing of the
bankruptcy action. 2008 WL 704401. As such, it has no
applicability to the case at hand.

Defendants also cite to a number of cases that did not involve an asbestos claim. In re Webb is factually analagous insofar as it involved a claim based upon a latent physical injury. 484 B.R. 501 (Bankr. M.D. Ga. 2012). In that case, a debtor received a post-petition class action settlement for congestive heart failure he was believed to have suffered as a result of having taken a particular medication years earlier. Although the congestive heart failure occurred two years prior to the filing of the bankruptcy petition, the debtor did not know that there was any link between the medication and congestive heart failure until well after his bankruptcy action had been filed and closed. Upon the bankruptcy trustee's petitioning for a reopening of the bankruptcy action to recover this class action settlement from the debtor in order to administer it as part of the bankruptcy estate, the court concluded that the product liability claim was property of the bankruptcy estate despite the fact that the debtor did not become aware of the claim until after his bankruptcy action was filed (and closed). Importantly, however, the court's decision turned entirely on its reluctant acknowledgment that, under the law applicable therein, the "discovery rule" did not apply to the debtor's product liability cause of action. Specifically, that court explained:

**But after reconsidering Alvarez, the Court concludes that the inapplicability of the discovery rule was necessary to the Eleventh Circuit's holding.** The alleged malpractice was advising and filing a Chapter 7 bankruptcy instead of a Chapter 11 bankruptcy and failing to convert, resulting in the trustee selling assets at a price disagreeable to the debtor. See In re Alvarez, 224 F.3d at 1275; In re Alvarez, 228 B.R. 762, 763 (Bankr. M.D. Fla. 1998). The fight over ownership of the claim (malpractice arising from mishandling a bankruptcy case) occurred in the very bankruptcy proceeding that was the subject of the malpractice claim. Under these facts, the debtor necessarily discovered the injury and cause postpetition. **The discovery rule not applying is essential for the holding** — that the cause of action accrued as of the filing and thus was property of the estate — because there is no logical way the discovery rule could apply and the Court's holding stay the same. **Because In re Alvarez is binding on this Court, and thus all necessary elements of that decision are binding on this Court, the Court can only conclude that the discovery rule does not apply to the present circumstances. The Court will look to whether the elements of the product liability claim occurred before or after filing.** It is undisputed that everything, except for knowledge of cause, occurred prepetition. The Court thus holds that the product liability claim accrued prepetition and is estate property.

484 B.R. at 504-05 (emphasis added). Significantly, however, maritime law recognizes the "discovery rule" in determining the accrual of an asbestos-related claim. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). For this reason, the rationale of In re Webb is inapplicable to the case at hand, which is governed by maritime law (and under which, as explained earlier herein, Mr. Rose's claim did not accrue prior to the filing of his petition and is not sufficiently rooted in his

pre-bankruptcy past to constitute property of the bankruptcy estate).

In re Borchert, 2010 WL 153384 (Bankr. N.D.N.Y. Jan. 8, 2010) (like In re Webb) involved a bankruptcy petitioner who experienced heart attacks he was believed to have suffered as a result of having taken a particular medication. The Court therein held that a class action settlement that the debtor received in connection with his medication-related heart illness was property of the estate (although it was received after the bankruptcy action was closed) because it was sufficiently rooted in the pre-bankruptcy past. The facts and reasoning of In re Borchert, however, make it distinguishable from the case at hand. The debtor in that case had not only exposure to the medication before the filing of the bankruptcy action, but also pre-heart attack symptom manifestation for several years before filing the bankruptcy action. In the case at hand, there is no evidence that Mr. Rose experienced asbestos-related symptoms prior to the filing of his bankruptcy petition. Moreover, the court in In re Borchert based its decision in large part on the fact that "only a small portion of [Mr. Borchert's] net [settlement] award (less than 10%) would be required to fund a 100% dividend to [his] creditors" such that "a determination that the [settlement] award is property of the Debtors' estate would not have a serious impact on the Debtors' fresh start"

accumulating wealth after the bankruptcy. 2010 WL 153384 at *2; see id. at *4. In the case a hand, unlike the court in In re Borchert, which had the pre-determined settlement amount at its ready, the MDL Court is not in a position to know the amount of recovery that Mr. Rose's personal estate will obtain for his asbestos claims. However, in light of the fact that Mr. Rose's debts at the time of the filing of his bankruptcy petition totaled approximately $43,000 while his assets (due to a very recent housefire) totaled only $2,400 (ECF No. 91-2 at 11-14, 18-19), it is unlikely that the Court could allow the creditors to the bankruptcy to be paid from a recovery on Mr. Rose's asbestos claims without consuming all or most of the recovery, as the amount still owed to the creditors would presumably be somewhere in excess of $40,000 (a fairly large amount). As such, the MDL Court cannot conclude that "a determination that the [asbestos claim] award is property of the Debtors' estate would not have a serious impact on the Debtors' fresh start" accumulating wealth after the bankruptcy. 2010 WL 153384 at *2; see id. at *4.

Field v. Transcontinental Ins. Co. is also distinguishable insofar as the court therein determined that the claim at issue (a "bad faith" claim against an insurer) was property of the bankruptcy estate because all of the events giving rise to the claim occurred prior to the debtor's filing

of the bankruptcy petition. 219 B.R. at 119. As such, it has no bearing on the case at hand, where there is no evidence of the events giving rise to accrual of Mr. Rose's asbestos claims until after the bankruptcy petition was filed.

Rivera v. Ndola Pharmacy Corp. is also distinguishable. In that case, the court considered "whether a cause of action that accrues after the petition has been filed but before the bankruptcy proceeding terminates becomes property of the estate." 497 F. Supp. 2d at 396. The Court held that the claim at issue was not sufficiently rooted in the pre-petition past to be owned by the bankruptcy estate because none of the relevant events occurred until after the petition had been filed. As such, it either has no bearing on this case or suggests that Mr. Rose's asbestos claims are not owned by the bankruptcy estate.

In re Salander involved a debtor's effort to pursue a claim against one of her creditors after her bankruptcy action was closed. 450 B.R. 37 (Bankr. S.D.N.Y. 2011). The court held that the claim was property of the bankruptcy estate for either or both of two reasons: First, the court determined that, under New York law, her claim had accrued pre-petition (because she knew of the alleged forgery giving rise to her claim prior to the filing of her petition) and was, therefore, property of the bankruptcy estate. Id. at 46. In this regard, this case is

inapplicable to Mr. Rose's situation, which is governed by maritime law, and for which there is no evidence of accrual of his lung cancer claim until after the bankruptcy action was filed and closed. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). Second, the court found (without much explanation) that, even if the debtor had not discovered the extent of the alleged forgery at issue, the actions giving rise to her claims (alleged fraudulent signing of documents) occurred prior to the petition and were, therefore, "sufficiently rooted in the pre-bankruptcy past." The factual scenario therein is distinguishable from that of Mr. Rose's insofar as the fraud (and accompanying harm) had occurred and existed pre-petition regardless of whether and when they were discovered by Mrs. Salander. In contrast, Mr. Rose's pre-petition asbestos exposure did not necessarily result in an injury at all and, instead, only resulted in injury upon the development of his illness. As such, based upon the evidence in the record, the crucial element of development of his asbestos illness occurred post-petition. As such, the rationale of In re Salander does not lead to a conclusion that Mr. Rose's asbestos claims are property of the bankruptcy estate – despite that fact that the alleged asbestos exposure giving rise to them occurred prior to the filing of the bankruptcy petition.

*In re Strada Design Assocs., Inc.* followed the same rationale as *In re Salander* and its analysis explicitly turned on the decision that formed the basis of *In re Webb* (*Alvarez*, 224 F.3d 1273). 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). Thus, for the same reasons that *In re Salander* and *In re Webb* did not lead to the conclusion that Mr. Rose's asbestos claims are property of the bankruptcy estate, *In re Strada* does not either.

In short, none of the cases relied upon by Defendant support the conclusion that Mr. Rose's asbestos claims are property of the bankruptcy estate. Applying the rationale of *Segal*, the Court concludes that, given the facts of the present case, and the standard set forth by maritime law for determining accrual of an asbestos cause of action (including, specifically, its utilization of the "discovery rule"), Mr. Rose's asbestos claims are not "sufficiently rooted in his pre-bankruptcy past to constitute property of the bankruptcy estate (pursuant to the exception to 11 U.S.C. § 541(a)(1) set forth in *In re O'Dowd*). Instead, the general rule of § 541(a)(1), as discussed in *In re O'Dowd*, 233 F.3d at 202 (limiting bankruptcy estate property to that in existence at the time of the filing of the petition), is applicable. Mr. Rose's asbestos claims (which did not accrue until after the bankruptcy petition was filed) are, therefore, not property of the bankruptcy trustee (and not subject to pursuit by creditors in the bankruptcy action). Accordingly,

Defendants' motion for summary judgment on grounds that Mr. Rose's asbestos claims are property of the bankruptcy estate (because they are sufficiently rooted in the pre-bankruptcy past) is denied. <u>Anderson</u>, 477 U.S. at 248-50.

## VI.  CONCLUSION

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.